02-09-445-CR
















 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT
WORTH

 

NO.
02-09-00445-CR

 

 


 
 
 WILLIAM CHAD PROFFITT
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM
THE 90TH DISTRICT COURT OF YOUNG COUNTY

 

------------

 

MEMORANDUM
OPINION[1] ON APPELLANT’S PETITION FOR DISCRETIONARY REVIEW

 

------------

 

Appellant William Chad Proffitt
filed a petition for discretionary review, arguing that this court should
reconsider the sufficiency of the evidence to support his conviction in light
of the Texas Court of Criminal Appeals’ recent opinion in Brooks v. State,
No. PD-0210-09, 2010 WL 3894613 (Tex. Crim. App. Oct. 6,
2010), which was handed down after our original opinion in this case issued.  Pursuant to rule of appellate procedure 50,
we have reconsidered our previous opinion upon reviewing Proffitt’s
petition for discretionary review.  See Tex. R. App. P. 50.  We withdraw our September 16, 2010 opinion
and judgment, and we substitute this opinion.

I. Introduction

A jury found Appellant William Chad Proffitt guilty of manufacturing a controlled substance,
namely methamphetamine, in an amount of four or more but less than two hundred
grams.  The trial court sentenced Proffitt to twenty-five years’ confinement and a $5,000
fine.  In two issues, Proffitt
argues that the evidence is legally and factually insufficient to sustain his
conviction.  We will affirm.

II. Factual and Procedural Background

          Sergeants
Jay Hutchins and Terry Vanlandingham of the Graham
Police Department responded to a domestic disturbance call in an alley near Glease Street in Graham, Texas.  When they arrived, they saw Trishell Rose and Proffitt
arguing outside of a nearby house.  The
officers separated the two, and Sergeant Hutchins began questioning Rose while
Sergeant Vanlandingham began questioning Proffitt.  Rose was
crying, had red marks on her face, and “looked as if she had been physically
assaulted.”  She said that she had
arrived home that day to find Proffitt cooking
methamphetamine in her house and that they had gotten into an argument about
it.  Rose lived in the house with her and
Proffitt’s daughter, and Proffitt
lived a few blocks away 

          Sergeant
Hutchins then spoke to Proffitt.  Sergeant Hutchins smelled “a very, very
strong odor of ether” on Proffitt but did not smell
ether on Rose.  Sergeant Hutchins
testified that ether is a common ingredient used to manufacture
methamphetamine.    

Rose gave Sergeant Hutchins
permission to search her house.  Sergeant
Hutchins testified that the smell of ether in the house was also “very, very
strong.”  Inside the house, the officers found a butter tub lying on the floor near a large
amount of pink powder that was later revealed to be methamphetamine, a baby
formula container filled with peeled lithium batteries, and a meth pipe.  The officers also found coffee filters, Rooto drain opener, and salt––all common household items
that are used in methamphetamine manufacturing––in Rose’s kitchen.    

Sergeant Hutchins contacted Sergeant
Richard Ferguson, the evidence custodian for narcotics with the Graham Police
Department.  When Sergeant Ferguson
arrived on the scene, he parked in the alley near a dumpster.  He could smell a strong odor of ether when he
got out of his car, and he searched the nearby dumpster.  Inside the dumpster, he found a “punched
starting fluid can” and a plastic Dr. Pepper bottle with a hose connected to it
and made into an “HCL generator,” items commonly used
to make methamphetamine.  The Dr. Pepper
bottle was “still gassing,” which indicated to the officers that
methamphetamine manufacturing had occurred recently.

The officers arrested Proffitt and took Rose to the police station for
questioning.  Sergeants Hutchins and Vanlandingham took Proffitt to an
interview room, gave Proffitt the Miranda warnings,[2]
and asked if Proffitt would write down what had
happened.  Proffitt
wrote the following statement:

[Rose]
pulled up and caught me making dope (meth). 
Got mad, and me and her fought because she didn’t know nothing about it.

 

The officers never attempted to
obtain fingerprints from the items found in the dumpster because, according to
Sergeant Hutchins, “all the evidence was leading to the defendant and the––the
bottle was gassing and that’s––to me that’s very volatile for us.”  Sergeant Hutchins testified that the case was
“pretty cut and dry” and that “[e]verything was
corroborating that [Proffitt] was the one in fact
processing methamphetamine.”

At Proffitt’s
trial, Rose testified that she always left her house unlocked and was not
surprised to find Proffitt there when she arrived
home the day of his arrest.  When she
walked in, she smelled ether and found Proffitt in
the kitchen “[m]essing with the meth stuff.”  She got mad at Proffitt
for doing that in her home, and during their argument, she threw a bowl
containing “bones,” or the “leftover of cooking the meth,” at Proffitt.  At the police
station, Rose wrote a statement similar to the above.  Rose admitted at trial that she had been
using methamphetamine “[o]ff and on” at that time.

Rose’s neighbor Ada
Brown testified that she saw Proffitt at Rose’s house
on a daily basis.  Brown called the
police on the day that Proffitt was arrested after
she heard him and Rose arguing and saw Rose hitting Proffitt.  Brown said that “[e]verybody
in the neighborhood” knew that Rose’s house was a “drug house” and that she saw
a lot of traffic in and out of the house.

Sergeants Hutchins and Ferguson
testified that they believed that the manufacturing process taking place inside
Rose’s house was the final step of the methamphetamine cooking process, the “powder-out stage.”  William L. Todsen,
the chemist who analyzed the powder found in Rose’s home, also testified that
if no anhydrous ammonia or pseudophedrine tablets
were found in the house, which was the case here, it would indicate that the
methamphetamine was not manufactured all in one place.  

Proffitt
was the sole witness for the defense.  He
explained that he had gone to Rose’s house to see their daughter and that he
and Rose had begun fighting because she would not let him see their daughter.  He said that, on the way to the jail, he had
asked the officers whether Child Protective Services (CPS) would get involved
and that one of the officers had replied that he “would have no choice but to
call CPS” if both Proffitt and Rose went to
jail.  Proffitt
testified that he had decided to say that he was manufacturing the
methamphetamine to do what was best for his daughter but that his statement was
“[a]bsolutely not true.”

III. Sufficiency of the Evidence

In two issues, Proffitt
argues that legally and factually insufficient evidence exists to show that he
manufactured a controlled substance in violation of health and safety code
section 481.112(d).  Specifically, he contends that, although
there is evidence that he was present where the methamphetamine was being
manufactured, there was insufficient evidence linking him to the actual manufacture
of the methamphetamine.

Because the Texas Court of Criminal Appeals recently held in Brooks v. State that there is no
meaningful distinction between the Clewis v. State[3]
factual sufficiency standard and the Jackson
v. Virginia[4] legal sufficiency standard, we proceed
to analyze Proffitt’s arguments under the standard
set forth in Jackson.  See
Brooks, 2010 WL 3894613, at *8.

A.  Standard of Review

In reviewing the sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. at 
319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the
responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton,
235 S.W.3d at 778.  The trier of fact
is the sole judge of the weight and credibility of the evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 2075 (2009).  Thus, when
performing a sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the factfinder.  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@ 
Hooper v. State, 214 S.W.3d
9, 16B17 (Tex. Crim. App. 2007).  We must presume that the factfinder
resolved any conflicting inferences in favor of the prosecution and defer to
that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d
at 778.  The standard of review is
the same for direct and circumstantial evidence cases; circumstantial evidence
is as probative as direct evidence in establishing the guilt of an actor.  Clayton, 235 S.W.3d at 778; Hooper, 214 S.W.3d at 13.

B.  Elements of Manufacture of 

a
Controlled Substance and Links to Manufacturing

 

A person commits an offense if the person knowingly manufactures methamphetamine.  Tex. Health & Safety
Code Ann. §§ 481.102(6), 481.112(a) (Vernon 2010).  The offense is a first degree felony if the
aggregate weight of the methamphetamine is four or more but less than two
hundred grams.  Id. § 481.112(d).  

The State can establish an offense by showing either that the defendant
acted on his own to manufacture methamphetamine or that he, acting with intent
to promote or assist with the commission of the offense, solicited, encouraged,
or directed another to manufacture methamphetamine or aided or attempted to aid
another in the manufacture.  See Tex. Pen. Code Ann. §§ 7.01, 7.02
(Vernon 2003).  To obtain a conviction
for the manufacture of a controlled substance, the State must link the
defendant either to an interest in the place where the manufacturing was taking
place or to the actual act of manufacturing. 
Webb v. State, 275 S.W.3d 22, 27 (Tex. App.––San Antonio 2008, no pet.); Isham v. State, 258 S.W.3d
244, 248 (Tex. App.––Eastland 2008, pet. ref'd).  This may occur through circumstantial
evidence.  Webb, 275 S.W.3d at 27.  “Although mere presence at a drug laboratory
is insufficient to support a conviction for manufacturing, it is a circumstance
tending to prove guilt that, when combined with other facts, shows that the
accused was a participant in the manufacturing.”  Id.  The purpose of requiring the State to
link the defendant to the manufacturing is to protect the innocent bystander
who merely inadvertently happens onto a methamphetamine lab.  Poindexter v. State, 153 S.W.3d 402, 406
(Tex. Crim. App. 2005); Gilmore v. State,
No. 02-06-00302-CR, 2008 WL 706621, at *2 (Tex. App.––Fort Worth Mar. 13, 2008,
no pet.) (mem. op.,
not designated for publication).

C. 
Sufficient Evidence

          The evidence supporting the jury’s
verdict and linking Proffitt to the act of
manufacturing methamphetamine includes Proffitt’s
written statement in which he admitted that he had manufactured the
methamphetamine.  As Proffitt
points out, under the corpus delicti doctrine, an
extrajudicial confession, standing alone, is insufficient to support a
conviction without other evidence showing that a crime has been committed by
someone.  Bible v. State, 162 S.W.3d
234, 246 (Tex. Crim. App. 2005); Salazar
v. State, 86 S.W.3d 640, 645 (Tex. Crim. App.
2002).  Some evidence, independent
of the accused’s statement, must show that the crime
actually occurred, although the independent evidence does not have to identify
the accused as the culprit.  See Salazar, 86 S.W.3d
at 644–45.

Although Proffitt recanted his written
confession at trial and explained that he had made the confession only after
learning that police would call CPS if both he and Rose went to jail, the
credibility of his testimony was an issue for the jury to determine.  See Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d
at 778.  Additionally, other evidence at trial independent of Proffitt’s confession shows that the offense of manufacture
of methamphetamine had occurred.  The
officers found several items related to methamphetamine manufacturing in and
around Rose’s house, including peeled lithium batteries, a “punched
starting fluid can,” a still-gassing homemade HCL
generator, and powdered remains, or “bones,” from methamphetamine
manufacturing.

Even without Proffitt’s written confession,
sufficient evidence exists to link Proffitt to the
recent manufacturing that had occurred at Rose’s house.  Rose testified that she had arrived at her
house that day to find Proffitt cooking
methamphetamine there.  Sergeant Hutchins
testified that when he arrived Rose was crying and looked as if she had
been physically assaulted; Rose explained to the officers that she and Proffitt began arguing when she got home and found him
cooking meth in her home.  Sergeant
Ferguson testified that Proffitt had a
“very, very strong odor of ether” about him and explained that if
someone smells of ether, it “means [he has] been in close proximity to some
open ether for a long period of time.” 
Sergeant Ferguson had never been around anyone who smelled of ether just
from smoking or using methamphetamine.  

Proffitt points out on appeal that Sergeant Vanlandingham’s
written report, which included Sergeant Hutchins’s findings, did not include
the fact that either officer had smelled ether on Proffitt.  Sergeant Hutchins testified that,
despite this omission from the report, he had in fact told Sergeant Vanlandingham that Proffitt
smelled of ether.[5]  Sergeant Hutchins said that if he had written
a report, he would have included that fact. 
And even assuming a conflict in the evidence, we must presume that the
jury resolved any conflicting inferences in favor of the prosecution and defer
to that resolution.  See Jackson, 443
U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d
at 778.  Sergeant Hutchins further
explained that Proffitt “was very adamant . . . that
he had just gotten there and he was leaving, he was on his way to leave, and
that everything that happened [had] happened outside the house, that he was not
involved inside the house.”  Sergeant
Hutchins opined that, based on his experience, he thought Proffitt
had made these statements because he did not want the officers to find the
methamphetamine inside the house. 
Although Proffitt did not live at Rose’s house and no
fingerprints or other direct evidence linked him to any of the evidentiary
items found in or near Rose’s house, the jury could have reasonably
inferred from other evidence at trial that Proffitt
did not innocently and inadvertently happen onto a methamphetamine lab, but was
an active participant in the drug manufacturing process.  See
Webb, 275 S.W.3d at 27.  

Viewing the evidence in the light most favorable to the jury’s verdict,
we hold that a rational trier of fact could have
found beyond a reasonable doubt that Proffitt had
committed the offense of manufacture of a controlled substance.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  Accordingly, we hold that the evidence is
sufficient to support Proffitt’s conviction.  We overrule Proffitt’s
two issues.

IV. Conclusion

Having overruled Proffitt’s
two issues, we affirm the trial court’s judgment.

 

 

 

 

                                                                             SUE
WALKER

                                                                             JUSTICE

 

PANEL:  LIVINGSTON, C.J.;
WALKER and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  November
18, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Miranda v. Arizona, 384 U.S.
436, 86 S. Ct. 1602 (1966).

 





[3]922 S.W.2d 126 (Tex. Crim.
App. 1996), overruled by Brooks, 2010
WL 3894613, at *8.

 





[4]443 U.S. 307, 99 S. Ct. 2781 (1979).





[5]Sergeant Vanlandingham was
not available to testify at trial.