**Opinion filed August 25, 2016**



# In The

# Eleventh Court of Appeals

_____

## No. 11-14-00305-CR

_____

## CARINA SANCHEZ SANCHEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Ector County, Texas**

**Trial Court Cause No. CR41432**

## MEMORANDUM OPINION

Carina Sanchez Sanchez pleaded not guilty to the state jail felony offense of debit card abuse. After a trial, the jury convicted her of that offense.[1] The State and Appellant reached an agreement on punishment, which the trial court approved. In accordance with the agreement, the trial court assessed Appellant's punishment at

---

[1]*See* TEX. PENAL CODE ANN. § 32.31(b)(1)(A) (West 2011).

confinement for two years and a fine of $1,000. As agreed, the trial court suspended the imposition of the sentence and placed Appellant on community supervision for three years. The trial court also ordered Appellant to make restitution of $915. In two issues on appeal, Appellant asserts that the State adduced insufficient evidence that she used a debit card of the victim and that the victim was the cardholder. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant for the state jail felony offense of debit card abuse. The State alleged that Appellant had a taken a VISA debit card that belonged to Sonia Torres and had knowingly used that card without Torres's consent. A person commits the offense of debit card abuse if she, with an intent to benefit fraudulently, presents or uses a debit card with the knowledge that the card has not been issued to her and is not used with the effective consent of the cardholder. PENAL § 32.31(b)(1)(A).

## II. *Evidence at Trial*

Torres, the dairy supervisor at the HEB grocery store in Midland, had purchased a "NetSpend" card, which is a prepaid VISA debit card, at HEB. At 6:18 a.m. on the morning of the offense, Torres used her NetSpend card at work to make a purchase. Although Torres was not sure where she had left her wallet after her purchase, she thought she had left her wallet and phone in the dairy cooler at HEB. Later that morning, she went to get her phone and her wallet out of the dairy cooler; her phone was there, but her wallet was not. Torres explained that she then saw text messages on her phone. One of the messages indicated that the PIN related to the NetSpend card had been changed. In addition, she received notice that three cash withdrawals of $302.50 along with service fees of $2.50 for each transaction had been made on her NetSpend card at the ATM inside the HEB store in Midland. The transactions occurred at 7:21 a.m., 7:23 a.m., and 7:25 a.m. Torres did not

change her PIN or make the withdrawals, and she reported the incident to the management team at the HEB.

Bob Murphy, who was HEB's unit director at the Midland store, and Manuela Mondragon, who was the store's operation leader at the time, retrieved the surveillance video that covered the area where the only ATM in the HEB store was located. After Murphy and Mondragon reviewed those portions of the video that corresponded to the time of the ATM withdrawals, and based on the clothes and physical appearance of the person in the video, they were convinced that Appellant was the person in the video. Murphy was "definitely sure" it was Appellant in the video because he had worked with her at the store for a long time. Torres also reviewed the video. Based on the appearance of the person in the video, including the pink jacket that that the person wore, Torres thought that Appellant was the person shown in the video. Torres reported the incident to the police. After the police conducted an investigation, the police obtained a warrant for Appellant's arrest. Appellant testified on her own behalf and denied that she was the person depicted in the surveillance video.

### III. *Standard of Review*

We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under this standard, we review all of the evidence in the light most favorable to the jury's verdict and decide whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. The trier of fact is the sole judge of the weight and credibility of the evidence, and a reviewing court may not reevaluate the weight and credibility of the evidence and substitute its own judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Polk v. State*, 337 S.W.3d 286, 288–89

(Tex. App.—Eastland 2010, pet ref'd); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd).

## IV. *Discussion and Analysis*

Appellant contends that there was insufficient evidence to show that Torres was the cardholder and that Appellant used Torres's card without authorization. The State argues that it introduced sufficient evidence and that this court is without jurisdiction to hear this case. As we explain below, we disagree with the State's position that we lack jurisdiction to hear this case, but we agree that it introduced sufficient evidence for a rational jury to convict Appellant, beyond a reasonable doubt, of debit card abuse.

### A. *We have jurisdiction to hear this case.*

The State argues that Appellant waived her right to appeal because the trial court accepted the State and Appellant's agreement on punishment. *See* TEX. R. APP. P. 25.2(a)(2) (providing a limited right of appeal in a "plea bargain case" for those matters raised by pretrial motion or upon the trial court's permission). *Schultz v. State*, 255 S.W.3d 153, 154 (Tex. App.—San Antonio 2008, no pet.). In support of its position, the State points to information in the supplemental clerk's record that indicates that Appellant may have waived her right to appeal, and the State also directs our attention to the portion of the reporter's record reflecting Appellant's agreement to the State's proposal on punishment, which the trial court adopted. We note that the clerk's record contains a certification from the trial court in which it indicated that Appellant had a right to appeal. We also note that Appellant timely filed her notice of appeal. As in *Shultz*, Appellant never changed her not guilty plea and, after a trial, was convicted by the jury. *See* 255 S.W.3d at 154. Only after being convicted did she enter into an agreement as to punishment. We hold that Appellant did not waive her right to appeal her conviction. We have jurisdiction to hear her appeal.

4

*B. The State adduced sufficient evidence to convict Appellant of the state jail felony offense of debit card abuse.*

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically correct jury charge, a person commits the offense of debit card abuse if she knowingly uses a debit card issued to another without the cardholder's consent. PENAL § 32.31(b)(1)(A). Evidence is insufficient when (1) the record contains no evidence probative of an element of the offense, (2) the record contains a mere "modicum" of evidence probative of an element of the offense, (3) the evidence conclusively establishes reasonable doubt, or (4) the acts alleged do not constitute the criminal offense charged. *Brown v. State*, 381 S.W.3d 565, 573 (Tex. App.—Eastland 2012, no pet.) (citing *Jackson*, 443 U.S. 314, 318 n.11, 320).

The State not only presented evidence that Appellant was the person that used the ATM at the HEB to make three unauthorized withdrawals of $302.50 each, but also proved that the NetSpend card belonged to Torres. Torres testified that she used her NetSpend card that morning but that she did not make three cash withdrawals of $302.50[2] each and did not authorize anyone to do so.

Murphy and Mondragon testified that, after they reviewed the surveillance video, they were certain that Appellant was the person in the video. Murphy testified that he was "[v]ery, very sure." Mondragon testified that she was "sure" that the person in the video was Appellant. Appellant testified that, although she has a pink jacket similar to the one that the individual wore in the surveillance video, she was not that person. Appellant denied that she had used Torres's card to withdraw money. Appellant claimed that she was at home at the time of the withdrawals and

_____

[2]The State introduced the account records that corroborated that three withdrawals were made from the HEB ATM between 7:21 and 7:25 a.m.

did not arrive at the HEB until 8:45 a.m. Appellant asserted that another person, who worked in the dairy department and looked similar to Appellant, was the one that took and used Torres's card. However, Torres testified that she believed that Appellant was the person in the video.

The jury is the factfinder, and if the evidence raises any conflicting inferences, we presume that the jury resolved such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 894; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury resolved the conflicting testimony by choosing to believe Murphy, Mondragon, and Torres and not to believe Appellant. After a review of the record, we hold that a rational jury could have concluded beyond a reasonable doubt that Appellant committed the offense of debit card abuse as charged in the indictment. We overrule Appellant's two issues.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON
JUSTICE


August 25, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.