**Opinion filed July 27, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00140-CR

_____

## MARK ADRIAN GONZALEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR45423**

## M E M O R A N D U M   O P I N I O N

The jury found Mark Adrian Gonzalez guilty of aggravated assault[1] involving family violence.  Appellant pleaded "true" to enhancement allegations of two prior felony convictions.[2]  The jury found the enhancement allegations to be "true" and

---

[1]*See* TEX. PENAL CODE ANN. § 22.02(a)(1) (West 2011).

[2]*See id.* § 12.42(d) (West Supp. 2016).

assessed punishment at confinement for sixty-two years. The trial court sentenced Appellant accordingly.

On appeal, Appellant asserts a sufficiency-of-the-evidence issue and an admission-of-evidence issue. We affirm.

## I. *The Charged Offense*

The grand jury returned an indictment against Appellant for aggravated assault by causing bodily injury to M.C. The indictment charged that Appellant intentionally, knowingly, or recklessly caused serious bodily injury to M.C. by striking, hitting, grabbing, pulling, kicking, or strangling her. The Texas Penal Code provides that a person commits aggravated assault when the person "causes serious bodily injury to another, including the person's spouse." *See* TEX. PENAL CODE ANN. § 22.02(a)(1) (West 2011). Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *See id.* § 1.07(a)(46).

## II. *Evidence at Trial*

Around 10:00 p.m. on May 16, 2015, M.C. completed her shift at Domino's. A witness testified that, when she left with Appellant, M.C. was "in one piece." M.C. told police that Appellant picked her up after work, drove around town, parked in a dark corner, and assaulted her. Appellant grabbed her, hit her, pinned her against the car door, grabbed her by the hair, and forced her head between the gearshift and his leg. She fought back and eventually freed herself after she began to have trouble breathing. She then opened the car door and fell against the pavement. Appellant got out of the car, positioned himself above her, struck her again, and stated, "I could have killed you."

When M.C. returned to Domino's approximately forty-five minutes later, she "looked like someone beat the hell out of her." A witness testified that M.C.'s eye

2

was "busted up really bad" and that she had bled from her ear and nose. The Domino's manager called 9-1-1 two times: first to summon the police and later to request an ambulance because M.C. could not breathe.

As M.C. was being treated by EMS personnel, she described her relationship with Appellant to the responding officer. She described previous physical attacks in which Appellant pinned her down, slapped her, put his hands around her throat, and kicked her in the ribs. The responding officer took M.C. to the hospital, where she was treated for a punctured lung sustained from a broken rib. She was hospitalized for three days.

After Appellant's arrest, he made phone calls to M.C. from jail, and the State introduced as evidence the recorded conversations. In these calls, Appellant at first apologized multiple times and stated, "I put you through this. I put you in the OR." M.C. stated that she would "have [Appellant's] attorney coach [her]" and that she needed an attorney to represent her when she "hit the D.A.'s office." In a later call she stated that she was "scared to death that [she] will never touch [him] again."

When M.C. was called to the stand to testify, she at first refused to answer some of the State's questions about Appellant and the alleged assault. When M.C. was confronted with possible contempt of court and confinement, she testified that she made up the story that Appellant beat her because she was mad at him and that she beat herself up and liked beating herself up. She also said that she punctured her lung when she ran into the corner of her trailer.

III. *Analysis*

On appeal, Appellant first argues that the State adduced insufficient evidence to support his conviction for aggravated assault. Second, Appellant argues that the trial court erred when it admitted evidence that he had met M.C. at a halfway house because that evidence indicated to the jury that he had a previous felony conviction.

A. *Issue One: The State adduced sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant committed the offense of aggravated assault involving family violence.*

Appellant argues that, because M.C. testified that she had beaten and injured herself and recanted her complaint against him, the State had adduced insufficient evidence to convict him. The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 894; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In this case, the jury heard M.C.'s testimony that she was "better at lying than telling the truth." The jury saw medical records that indicated that M.C. had a punctured lung and heard medical testimony that, had she not received emergency treatment, she would have died or been permanently disabled. The jury heard all three of the 9-1-1 calls logged in response to the assault, and the jury could have inferred from M.C.'s tone of voice that she was upset and from her words that she was afraid to tell police who assaulted her. The jury also heard testimony from the

4

responding officer and heard the recording of his interview with M.C. In addition, the jury viewed the photographs that the officer took of the victim that night, which included marks on her arms, under her eye, on her hands, on the back of her neck and ear, as well as her cheek. Furthermore, although Appellant did not testify on his own behalf, the jury heard his jailhouse calls and conversations with M.C.

As factfinder, the jury is entitled to judge the credibility of the witnesses, and it can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). In addition, juries may make reasonable inferences from evidence that is presented at trial, and "circumstantial evidence is as probative as direct evidence in establishing . . . guilt." *Hooper*, 214 S.W.3d at 14. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and, therefore, defer to that determination. *Clayton*, 235 S.W.3d at 778. Here, the jury chose to believe the State's witnesses, disbelieve M.C.'s recantation, and find that her initial complaint was reliable. We hold that a rational juror could have found the existence of each of the elements of the offense beyond a reasonable doubt. We hold that the evidence was sufficient to find Appellant guilty of aggravated assault involving family violence. We overrule Appellant's first issue.

> B. *Issue Two: Because Appellant did not timely object to the admission of the complained-of evidence at trial, he failed to preserve that issue for appellate review.*

Appellant argues that the trial court erred when it allowed the jury to hear an excerpt of the victim's statement in which she indicated that Appellant met her at a halfway house. He argues that this evidence indicated to jurors that he was a felon, which was prejudicial to his defense. He also argues that the State did not show a valid use for the evidence, which was irrelevant. The State argues that Appellant failed to preserve this issue for appellate review. We agree. In order to preserve a

complaint for appellate review, a party must present the trial court with a timely request, objection, or motion stating the specific grounds for the desired ruling if those grounds are not apparent from the context and must also obtain a ruling. TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Failure to object when there was an opportunity to do so generally waives error. *Burt v. State*, 396 S.W.3d 574, 577–78 (Tex. Crim. App. 2013).

At trial, the State offered Exhibit No. 6, which was a DVD recording that included the victim's statement about where she met Appellant. Defense counsel responded, "No objection," and the trial court admitted the exhibit into evidence. The State then requested that the exhibit be partially published to the jury, which it was, and defense counsel objected to the State playing the part of the recording that included M.C.'s statement about how she met Appellant. The trial court noted that defense counsel did not object to the exhibit when it was offered into evidence, and the trial court overruled the objection. "It has long been the rule that in order to preserve error on appeal by way of an objection alone, the objection must come *before* the tangible evidence which is clearly objectionable is admitted, or the question manifestly calling for objectionable testimony is answered in front of the factfinder." *Polk v. State*, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987). An objection made after the evidence has already been admitted before the jury is not timely and does not preserve error. *Mulder v. State*, 707 S.W.2d 908, 913 (Tex. Crim. App. 1986). Because Appellant did not timely advance his objection at the time State's No. 6 was offered and admitted, Appellant has not preserved his objection for appellate review. *See* TEX. R. APP. P. 33.1(a); *Mulder*, 707 S.W.2d at 913; *see also Freeman v. State*, 230 S.W.3d 392, 407–08 (Tex. App.—Eastland 2007, pet. ref'd). We overrule Appellant's second issue.

6

IV. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

July 27, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.