**Opinion filed November 7, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00309-CR

_____

## SHANE LEE LEMONS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**
**Gaines County, Texas**
**Trial Court Cause No. 17-4782**

### M E M O R A N D U M   O P I N I O N

The jury found Appellant, Shane Lee Lemons, guilty of burglary of a habitation, found the enhancement paragraph to be true, and assessed his punishment at confinement for fifty years in the Institutional Division of the Texas Department of Criminal Justice and a $1,000 fine. The trial court sentenced Appellant accordingly. On appeal, Appellant challenges the sufficiency of the evidence to support his conviction. We affirm.

*Background Facts*

Alicia Perez Espinoza and her sons, Jose Efrain Perez and Jose Angel Perez, have a house located at 211 Southwest Avenue B in Seminole, Texas. Jose Efrain Perez previously lived in the house for two years, but he had moved out approximately one and one-half years prior to the burglary. After Jose Efrain Perez moved out, the house was vacant, and family members primarily used the house for storage. On March 14, 2017, Jose Efrain Perez visited the house, and nothing seemed out of place. On March 18, Jose Efrain Perez returned and discovered the house had been burglarized. He then contacted the police, who began investigating. After meeting with the police, Jose Efrain Perez tried to locate his property by looking through for-sale postings on Facebook. There, he found several posts created by Appellant attempting to sell property that had been taken from 211 Southwest Avenue B. This included an air conditioner window unit, a lawn mower, and a weed eater, all of which were missing from the house. Jose Efrain Perez showed pictures of the postings to the police.

On March 21, the chief of police, Bernard "Bernie" Kraft Jr., began assisting with the investigation. Using the lead from Appellant's Facebook post, Chief Kraft contacted Appellant's girlfriend, Audra Barberousse, and her daughter, Helen Willis, who both lived with Appellant at the time of the burglary. Both women assisted Chief Kraft in recovering some of the missing property. Chief Kraft described different items that were missing, and the women confirmed that much of the property was in their home and that Appellant had told them he received the property from a friend for helping the friend move. The women also told Chief Kraft that, on March 18, they had accompanied Appellant to Brownfield, Texas, where Appellant sold what the women believed was an air conditioner. Using that information, Chief Kraft located the house where the sale occurred, which was owned by Teresia DePoyster and Paul Woodard. Chief Kraft then contacted

DePoyster and Woodard and retrieved the air conditioner. DePoyster and Woodard confirmed that they had acquired the air conditioner via Appellant's Facebook post.

After reclaiming the air conditioner, Chief Kraft recovered many of the other missing items from Appellant's residence. This included the lawn mower and weed eater that were posted on Facebook, a Casio keyboard, a coffee maker, clothing, cosmetics, a suitcase, and a helmet Jose Efrain Perez used while riding his four-wheeler. After repossessing the missing items, Chief Kraft contacted Appellant. Chief Kraft testified that, when he asked Appellant about the burglary, Appellant said he "knew nothing about it, prove it."

*Analysis*

In his sole issue on appeal, Appellant contends that the evidence is legally insufficient to establish that he is guilty of burglary of a habitation. Appellant argues that there is insufficient evidence to establish that the structure was a habitation; that Appellant entered the habitation; and that Appellant attempted to commit theft, committed theft, or had the intent to commit theft while entering the habitation.

The standard of review for sufficiency of the evidence is whether any rational trier of fact could have found the appellant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ("[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case."). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witness's testimony. *Sharp v. State*, 707

S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

As charged in this case, a person commits burglary of a habitation if, without the effective consent of the owner, the person enters a habitation and commits or attempts to commit theft. TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2019). Appellant first argues that there is insufficient evidence that the structure in question was a habitation. The Penal Code defines habitation as "a structure or vehicle that is adapted for the overnight accommodation of persons." *Id.* § 30.01(1). In this context, "adapted" means suitable. *Blakenship v. State*, 780 S.W.2d 198, 209 (Tex. Crim. App. 1989) (op. on reh'g). What constitutes a structure that has been adapted for overnight accommodation "is a complex, subjective factual question fit for a jury's determination." *Id.* Relevant factors to consider are "whether someone was using the structure . . . as a residence at the time of the offense; whether the structure . . . contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (e.g. house, apartment, condominium, sleeping car, mobile home, house trailer)." *Id.* While all factors are relevant, none are essential or dispositive. *Id.* On appeal, the determination of whether a structure is a habitation will only be overturned if the appellant shows that "no reasonable trier of fact could have found the place to have been a habitation under the criteria above." *Id.* at 209–10.

In this case, there was sufficient evidence that the house was a habitation. The evidence at trial established that the house had a kitchen, living room, bathroom, bedrooms, and a detached garage. The house was also wired for electricity and

plumbed for water and gas. Additionally, Jose Efrain Perez testified that he previously lived in the house for about two years. On the date of the burglary, despite lacking a bed, the house contained other furniture such as a sofa and a Barcalounger. Although the house had been vacant for at least a year and a half, family members had been using the house to store household items, and Alicia Espinoza testified that she and her son planned to rent the house to others. Moreover, the Court of Criminal Appeals has found a structure to be a habitation even though it was vacant for approximately two years. *See id.* at 206, 210. Thus, the record contains sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that the house was a habitation.

Appellant also argues that there is insufficient evidence to show that he entered the habitation or committed or attempted to commit theft. Although Appellant emphasizes that there is no direct evidence, direct evidence is not necessary. "Guilt of the offense of burglary can be established circumstantially by the combined and cumulative force of all the incriminating circumstances." *Hernandez v. State*, 190 S.W.3d 856, 863 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.). Further, it is well settled that "a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary." *Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *see also Harvard v. State*, 972 S.W.2d 200, 203 (Tex. App.—Beaumont 1998, no pet.) (The fact that the defendant possessed stolen property on the same day that it was taken and sold it to another party allowed the jury to infer that the defendant had entered the victim's house and taken the property.).

Here, there was sufficient evidence for the jury to reasonably conclude that Appellant entered the habitation without the effective consent of the owner and committed or attempted to commit theft. The evidence at trial showed that the house was broken into and that property was removed. Alicia Espinoza and Jose Efrain

5

Perez both testified that only family members had permission to enter the house and that Appellant did not have permission to enter. Jose Efrain Perez also testified that, shortly after the break-in, he discovered that Appellant had listed many of the stolen items for sale on Facebook. DePoyster testified that Appellant offered to trade an air conditioner for her mobile hotspot via Facebook, and both DePoyster and Woodard identified Appellant as the man who came to their house to make the trade. Jose Efrain Perez further confirmed that the air conditioner in Appellant's Facebook post was the same air conditioner that had been stolen.

Additionally, the evidence showed that, at the time of the break-in, Appellant resided at 209 ½ Southwest Avenue B, which is located right next to the burgled house at 211 Southwest Avenue B. Chief Kraft testified that a large majority of the property that was stolen from 211 Southwest Avenue B was recovered from Appellant's residence. This included the lawn mower and weed eater listed in the indictment. Jose Efrain Perez confirmed that the weed eater and lawn mower in Appellant's Facebook post were the same ones taken from his home. Chief Kraft testified that distinguishing marks on the weed eater established that the weed eater in Appellant's Facebook post was the same one recovered from Appellant's residence. Similarly, Chief Kraft confirmed that the stolen lawn mower was the lawn mower in Appellant's Facebook post and was recovered from Appellant's home. The jury also heard that the missing Casio keyboard, coffee maker, clothing, cosmetics, suitcase, and helmet were recovered from Appellant's residence as well.

Barberousse and Willis both testified that they lived with Appellant at the time of the break-in and that Appellant told them that he had received the property in question from a friend for helping him move. Appellant now argues that this explanation of how he received the property shows that there is insufficient evidence to support his conviction. But, as the final judge of credibility, the jury was free to disregard this unsubstantiated justification that was raised at trial. *See Barnes v.*

*State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (stating that the jury is the exclusive judge of the credibility of, and the weight to be given to, witness testimony). Based on our review of the evidence, we hold that the evidence was sufficient to support the jury's verdict. Appellant's sole issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

KEITH STRETCHER

JUSTICE

November 7, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.