Opinion filed June 25, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00236-CR

_____

## EDWARD SALAS MARTINEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR39752**

## MEMORANDUM OPINION

The jury found Edward Salas Martinez, Appellant, guilty of the offense of indecency with a child by contact.[1]  The jury assessed punishment at confinement for ten years but recommended that the trial court suspend the sentence and place Appellant on community supervision.  The trial court accepted the jury's verdict

---

[1]*See* TEX. PENAL CODE ANN. § 21.11 (West 2011).

and recommendation and sentenced Appellant to confinement for ten years, but it suspended the sentence and placed Appellant on community supervision for ten years. Appellant asserts two issues on appeal. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant for the offense of indecency with a child by contact and alleged that Appellant engaged in sexual contact with L.T., a child younger than seventeen years of age, when he touched her breast and did so with the intent to arouse and gratify his own sexual desire. An offense of indecency with a child by contact is a felony of the second degree. PENAL § 21.11(a)(1), (d). Appellant pleaded "not guilty" to the charge, and the case proceeded to trial.

## II. *Evidence at Trial*

L.T., who was fourteen years old at the time, and a friend, A.M., went to a carnival in Midland one night in September 2011. L.T. testified they left the carnival together later that night and went back to A.M.'s home because A.M. had invited L.T. to spend the night. A.M. lived with Appellant, her father. The girls watched television and ate food. L.T. said that Appellant arrived home approximately thirty minutes after the girls returned from the carnival and that he sat and talked with them.

L.T. and A.M. finished socializing and went to A.M.'s room to sleep. L.T. testified that Appellant followed them into A.M.'s room, uninvited, and that they all three lay on the bed; L.T. and A.M. lay in the bed next to each other with their heads at the head of the bed, and Appellant lay at the foot of the bed, perpendicular to them. L.T. claimed that the bedroom lights were off and that the room was dark. A.M. was nearly asleep or asleep when Appellant touched L.T.'s feet in a "massage way," which L.T. thought was "odd," so she pulled them away. Appellant continued to rub L.T.'s feet and moved his hands up her leg almost to her knee. L.T. testified that she was afraid at this point.

2

Appellant then "got up and moved around to the other side of [L.T.]" and lay down so that L.T. was now between A.M. and Appellant and all three were now aligned parallel in the bed. Appellant touched L.T.'s arms and her stomach underneath her clothes, and then he moved his hand to her back. L.T. continuously pushed Appellant's hand away, but he continued to put his hand on her. L.T. described his touch as gentle and not aggressive.

At this point, L.T. stood up and went to the restroom. She returned to A.M.'s bedroom and discovered that Appellant was still positioned in the same spot on the bed. L.T. crawled back to the same spot on the bed she had left because she was unsure what would happen if she tried to leave or contact anyone. Appellant continued to rub L.T.'s body and moved his hand to her buttocks on the outside of her pants. L.T. testified, "At one point [Appellant] went up under my shirt and tried to get under my bra, but I pushed his hand off and out of my clothing. He went on top of my clothing and started grabbing my boobs." L.T. described Appellant's grab and said, "He was squeezing, sort of in a circular motion." L.T. pushed Appellant's hand away. He then tried to rub her vagina, and she again pushed him away.

A.M. awoke at one point after L.T. returned from the bathroom and said to Appellant, "Why are you still here? Go to bed." Appellant responded, "Oh, I'm sorry." Appellant stopped touching L.T. for a "little bit," and L.T. believed that A.M. fell back asleep. Appellant then touched L.T.'s arms, stomach, and back again. L.T. eventually fell asleep, woke up around mid-morning, and asked A.M. to take her home, but she never mentioned the incident.

About two weeks later, L.T. attended a "meet-the-teachers" function at her former school.[2] She went to see one of her former teachers, Sarah Duran, and

[2]L.T. was there with her parents because L.T.'s younger sister still attended the school and because L.T. wanted to visit with her prior teachers.

3

made an outcry to Duran about the incident. Duran encouraged L.T. to tell her parents and told L.T. that, if L.T. did not tell her parents, then Duran would have to report the outcry to law enforcement. L.T. told her parents about the incident later that night when she and her mother returned home.

Duran, along with her boyfriend, Sammy Rodriguez, Jr., went to L.T.'s home on the night of L.T.'s outcry after L.T. had returned home and told her parents. Duran, Rodriguez, L.T., and L.T.'s parents all spoke about the incident. Duran informed L.T. and L.T.'s parents that, if they did not report the incident to law enforcement, she would have to do so herself. L.T. went to the Midland Police Department later that night to report the incident.

A.M.'s description of the events that occurred on the night of the incident differed from L.T.'s description. A.M. testified that, after she and L.T. returned home from the carnival and went to her bedroom, they did not lie down to go to sleep immediately. Rather, A.M. claimed that she and L.T. went into her bedroom, that the lights were on, and that they continued to talk. Appellant only entered the room after A.M. invited him in because she and L.T. wanted to talk to him about their night at the carnival. A.M. became tired after she had talked for a while, so Appellant left the room and shut the door. A.M. turned the lights off and went to sleep.

A.M. also testified that she had a lock on her bedroom door. Although she did not lock the door on the night of the incident, the door was nevertheless locked when she woke up the next morning, and she and L.T. were the only ones in her bedroom. A.M. is the only person that had a key to unlock her door from the outside, but the door can be locked from the inside. When A.M. saw L.T. the next morning, L.T. did not appear to be upset or depressed.

4

### III. *Issues Presented*

Appellant asserts two issues on appeal. First, Appellant challenges the sufficiency of the evidence to support his conviction. Second, he challenges the trial court's exclusion of impeachment evidence.

### IV. *Standards of Review*

The standard of review for a challenge to the sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all of the evidence in the light most favorable to the jury's verdict and decide whether any rational jury could have found each element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the prosecution. *Jackson*, 443 U.S. at 318; *Brooks*, 323 S.W.3d at 894; *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999) (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993)).

We review the admission or exclusion of evidence for an abuse of discretion. *Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crim. App. 2005) (citing *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996)). Under an abuse of discretion standard, we will reverse the trial court's decision only if the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Montgomery v. State*, 810 S.W.2d 372, 390–92 (Tex. Crim. App.

5

1991).  We will uphold the trial court's ruling if it is within the zone of reasonable disagreement.  *Id.* at 391.

<h2 style="text-align:center">V. <em>Analysis</em></h2>

### A.  Issue One: Sufficiency of the Evidence

To prove that Appellant committed the offense of indecency with a child by contact, the State had to show that Appellant touched, either directly or through clothing, the breast of L.T., a child younger than seventeen years of age, with the intent to arouse or gratify Appellant's sexual desire.  *See* PENAL § 21.11(a)(1), (c). The testimony of a child victim alone is sufficient to support a conviction for indecency with a child by contact.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2014); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd).  In addition, the jury may infer intent to arouse or gratify sexual desire from the defendant's conduct, remarks, or all the circumstances surrounding the incident.  *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981).  "An oral expression of intent is not required, and a defendant's conduct alone is sufficient to infer intent."  *Cruz v. State*, No. 11-05-00112-CR, 2006 WL 572002, at *3 (Tex. App.—Eastland Mar. 9, 2006, no pet.) (not designated for publication) (citing *Tyler v. State*, 950 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, no pet.)).

L.T. testified that Appellant "went on top of [her] clothing and started grabbing [her] boobs" and that "he was squeezing, sort of in a circular motion." When she pushed him away, he then started to rub her vagina through the outside of her clothes.  Appellant also touched L.T.'s buttocks through the outside of her clothes.  Duran testified that, when L.T. made the outcry to her, L.T. was "very upset, very scared."  Duran went home and told Rodriguez about the outcry, and they decided to go to L.T.'s house.  Duran said she never coached L.T. to say

anything but, rather, informed L.T. of Duran's duty to report the incident to law enforcement if L.T. or L.T.'s parents did not do so.

Rodriguez had worked with Appellant in the car business on and off since the mid-1990s. On the night of the outcry,[3] Rodriguez called to inform Appellant of the allegations made against him. Rodriguez said Appellant was "pretty much speechless." Although Rodriguez said he did not think anyone had coached L.T. on what statement to give to law enforcement, Rodriguez claimed L.T.'s story did not "make sense."

A.M. testified she was not a heavy sleeper, and she believed she would have woken up had Appellant committed the acts alleged by L.T. According to A.M., when Appellant informed A.M. of L.T.'s allegations, Appellant was in shock. Finally, A.M. did not believe L.T.'s story and thought it was a result of L.T.'s jealousy and desire for attention. The State's three final witnesses, Frank Gregory, Cassandra Gregory, and Laura Bond all testified that they knew L.T. well, and each claimed that L.T. did not crave attention or drama.

The jury was entitled to accept or reject any or all of the testimony of each witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). Although the State and Appellant presented conflicting versions of the incident and Appellant attacked L.T.'s credibility, the jury resolved those conflicts against Appellant. L.T. testified that Appellant rubbed her feet; moved closer to her; and touched her arms, stomach, back, buttocks, and breasts. Despite that L.T. repeatedly pushed Appellant's hand away, Appellant continued to touch her body. After L.T. pushed Appellant's hand off her breasts, he tried to put his hand on her vagina and rub it. The jury apparently believed L.T. when she said Appellant touched her breast, and the jury could have inferred from Appellant's actions that,

---

[3]There was conflicting testimony as to when exactly Rodriguez called Appellant to inform Appellant of the allegations made against him.

7

when he touched L.T., he did so with the intent to arouse or gratify his sexual desire. *See McKenzie*, 617 S.W.2d at 216. We have reviewed the record and hold that a rational jury could have found beyond a reasonable doubt that Appellant committed the offense of indecency with a child by contact. We overrule Appellant's first issue.

### B. Issue Two: Exclusion of Impeachment Testimony

Appellant argues in his final issue that the trial court erred when it overruled his "request to impeach the victim with a prior misleading statement." Appellant specifically claims that he should have been able to question L.T. about (1) her prior misrepresentation of her age on her Facebook account and (2) her prior allegation that, while she visited the country of Belize, her grandmother's boyfriend forced her to watch pornography. Rule 608(b) of the Texas Rules of Evidence provides the following: "Except for a criminal conviction under Rule 609, a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." TEX. R. EVID. 608(b).

### 1. Facebook Account

L.T. misrepresented her age on her Facebook account when she claimed she was born in 1991; she was actually born in 1997. Appellant's trial counsel argued that the purpose of this evidence would be to indicate to the jury that L.T. had "not always been truthful in the past." On appeal, Appellant argues that he "should have been allowed to introduce this evidence to show that the victim[] had lied in the past and was capable [of] making misleading statements." Appellant argued at trial and argues on appeal that truthfulness was the purpose for which he sought to introduce the evidence, which is a purpose that is not permitted under Rule 608(b).

8

Rule 608(b) is very restrictive and allows for no exceptions. *Gonzales v. State*, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd) (citing *Ramirez v. State*, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990)). Under the Confrontation Clause of the Sixth Amendment, specific acts of conduct may be used to show a witness's bias or interest, but specific acts of conduct are not admissible to impeach a witness's character for truthfulness. *Id.* (citing *Moody v. State*, 827 S.W.2d 875, 891 (Tex. Crim. App. 1992) (while there are no exceptions to Rule 608(b), constitutional confrontation right includes opportunity to expose witness's motivation in testifying); *Thomas v. State*, 897 S.W.2d 539, 542 (Tex. App.—Fort Worth 1995, no pet.) (evidence of specific acts of conduct are generally not admissible to attack witness's credibility, but exception exists where evidence shows bias or motive to testify untruthfully)). Appellant never advanced any argument on bias or motive but stated the purpose for the admission of the statement was to show untruthfulness based on a specific prior instance. Use of the evidence for that purpose is prohibited, and the trial court did not abuse its discretion when it excluded the evidence.

## 2. *Prior Allegation of a Sexual Offense*

L.T. had made a prior allegation that, when she visited family in Belize, her grandmother's boyfriend forced her to watch pornography. When it comes to the admission of evidence of a sex-offense victim's prior unsubstantiated allegation against another, the Confrontation Clause may dictate the admission of the evidence. *See Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). In *Lopez,* the Court of Criminal Appeals had to decide "whether, in a case involving a sexual offense, the Confrontation Clause demands that evidence of the complainant's prior false allegations of abuse against a person other than the defendant be admissible, despite Rule 608(b)'s proscription against admitting specific instances of conduct." *Id.* at 223.

In *Lopez*, the Court of Criminal Appeals balanced the probative value of the evidence that the defendant sought to introduce at trial against the prejudice of any admission of the evidence. *Id.* at 225. The trial in *Lopez* "was the prototypical 'swearing match' between Lopez and [the complainant], so there was a heightened need on Lopez's part to impeach [the complainant's] credibility." *Id.* The *Lopez* court concluded that the trial court properly excluded evidence of the prior allegation for two reasons. First, there was no evidence to show that the complainant's prior allegation against another was false, and second, the prior allegation and the allegation at issue in the case were not the same. *Id.* at 225–26. The *Lopez* complainant had previously alleged that his mother physically abused him; in contrast, the complainant had alleged that Lopez sexually abused him. *Id.* at 226.

The same reasoning applies in the present case. First, Appellant provided no evidence that L.T.'s prior allegation was false.[4] Appellant's arguments at trial focused only on unsupported speculation, and L.T., when she testified outside the presence of the jury, insisted that the alleged acts actually occurred. Second, L.T.'s allegation that a man in Belize forced her to watch pornography is different from the allegation she made against Appellant. Accordingly, the evidence failed to have any probative value in impeaching L.T., and the risk that the evidence would unduly prejudice and confuse the jury was high. Thus, the trial court did not abuse its discretion when it excluded the evidence. We overrule Appellant's second issue.

---

[4]Appellant's contentions that L.T.'s allegation was untrue because it was not investigated and did not result in a conviction are irrelevant because, as the trial court noted, there was no evidence that forcing a child to watch pornography is an illegal act in Belize.

## VI. *Conclusion*

We have reviewed the record, and we hold that there was sufficient evidence to convict Appellant of the offense of indecency with a child by contact. We also hold that the trial court did not abuse its discretion when it excluded Appellant's proffered impeachment evidence.

## VII. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


June 25, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.