**Opinion filed August 31, 2016**



## In The

# Eleventh Court of Appeals

_____

## No. 11-15-00083-CR

_____

## DUSTIN JAMES BEAL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Coleman County, Texas**
**Trial Court Cause No. 2480**

### M E M O R A N D U M   O P I N I O N

Upon his plea of not guilty, the jury found Dustin James Beal guilty of the first-degree felony offense of aggravated sexual assault of a child.[1] Appellant pleaded "not true" to an enhancement paragraph in which one prior felony

---

[1]*See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2016).

conviction was alleged. The trial court found the enhancement paragraph to be "true,"[2] assessed punishment at confinement for life,[3] and sentenced Appellant accordingly. In three issues on appeal, Appellant asserts that the evidence was insufficient to establish that he (1) penetrated J.D.'s sexual organ,[4] (2) acted voluntarily, and (3) acted intentionally or knowingly. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant for aggravated sexual assault of a child and alleged that he intentionally or knowingly caused the sexual organ of J.D., a child younger than fourteen years of age, to be penetrated by his finger. A person commits the offense of aggravated sexual assault if he intentionally or knowingly "causes the penetration of the anus or sexual organ of a child by any means" and the victim is younger than fourteen years of age. PENAL § 22.021(a)(1)(B)(i), (a)(2)(B).

## II. *Evidence at Trial*

L.R. testified that he took his six-year-old daughter, J.D, and his two-year-old son to spend a couple of weeks with his mother—J.D.'s grandmother—Judy Bullock. Appellant, Bullock's boyfriend, lived with Bullock. The next day, L.R. went back to work.

J.D. testified that, during the time that she stayed with her grandmother and Appellant, she slept in panties and pants on a "little bed" with her brother and Appellant's son. One night, Appellant's son began to cry. Appellant came in the room to comfort his son and got into the bed with J.D. and the other two children. J.D. went back to sleep after Appellant's son stopped crying; she was awakened

---

[2]*See* PENAL § 12.42(c)(2)(B)(ii).

[3]*See* PENAL § 12.42(c)(2)(A)(i).

[4]J.D. is a pseudonym used to refer to the victim in this case.

when Appellant, who was still in the bed with the children, touched her inside her "private area" and outside her "private area" with his hand. She referred to her private area as where she goes "potty." J.D. "squeezed [her] legs together and move[d]" to get away from Appellant because he was hurting her. J.D. felt a stinging pain the next morning when she went to the restroom.

L.R. picked up his children a couple of weeks after he had dropped them off so that they could spend the rest of the summer with him. On the way home, L.R. asked J.D. "if everything was okay, good or bad, if anything happened," and she quickly said that "everything was fine." Later, when L.R. saw J.D. push her little brother, L.R. confronted her about it, and J.D. denied that she had pushed him. L.R. then told J.D. "that [he] was her father and [he] never wanted her to ever lie to [him] . . . that she could come to [him] for anything and that [he] would always be there for her." J.D. then admitted that she not only had pushed her brother, but that she had also previously lied to L.R. when she had told him that everything was okay. J.D. started to tear up and apologized for lying. She told L.R., "When I was with my grandma, her boyfriend did touch me." L.R. pushed her for more details, and she replied that Appellant "went inside her pants" and that "she was scared" to tell L.R.

L.R. immediately called J.D's mother.[5] He also called Bullock and the police. Phillip Ditto, a Texas Ranger, testified that shortly after the complaint was made, he arranged for J.D. to undergo a sexual assault examination by a sexual assault nurse examiner. He said that the "SANE" results showed "no trauma found," but he explained that, in light of the amount of time between the event and the sexual assault

---

[5]At the time, L.R. and J.D.'s mother were separated and had a custody arrangement that the children would spend the school year with her and the summer with him.

examination, the results were "not uncommon" because "[t]he body has a way of healing."

Appellant testified on his own behalf and denied that he had assaulted J.D. Defense counsel also argued that L.R., whose father had been a child molester, was not a reliable witness.

### III. *Standard of Review*

We review the sufficiency of the evidence to determine whether any rational jury could have found Appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Following that standard, we review all the evidence in the light most favorable to the verdict and decide whether any rational jury could have found, based on the evidence or reasonable inferences from it, each element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. The trier of fact is the sole judge of the weight of the evidence and credibility of the witnesses, and it may believe any portion of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicts in the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 894; *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999) (quoting *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim App. 1993)).

### IV. *Discussion and Analysis*

Appellant argues that the State failed to prove that he committed every element of the alleged offense because of insufficient circumstantial evidence and because J.D.'s testimony was ambiguous and unreliable. The State asserts that the

4

evidence was sufficient to prove Appellant committed each and every element of the offense. We agree with the State that a rational jury could have found beyond a reasonable doubt that the evidence, or reasonable inferences from it, proved every element of the offense. We will address Appellant's first and third issues on penetration and intent or knowledge, respectively, followed by his second issue on the voluntariness of his conduct.

> *A. Issues One and Three: The State adduced sufficient evidence that Appellant intentionally or knowingly penetrated J.D's sexual organ with his finger.*

The State had to prove that J.D. was (1) under fourteen years of age and that Appellant (2) intentionally or knowingly (3) caused the penetration of J.D.'s sexual organ by his finger. *See* PENAL § 22.021(a)(1)(B)(i), (a)(2)(B). The testimony of a child victim does not require corroboration. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2016); *see Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (determining that a child victim's use of unsophisticated terminology can establish the element of penetration beyond a reasonable doubt). Texas law does not require additional physical, medical, or other evidence to corroborate J.D.'s testimony. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *see* CRIM. PROC. art. 38.07(a).

Here, J.D. testified that Appellant lay down in the same bed with her and the other children. Appellant woke J.D. when he put his hands inside her panties and touched her on her "private area" and inside her "private area." J.D. managed to get Appellant to stop touching her when she squeezed her legs together and moved away from him. Appellant argues that J.D.'s testimony that Appellant used "both hands" and that J.D.'s use of the terms "private area" and "area she uses to go potty" are insufficient to establish penetration of her sexual organ. We disagree. The jury

could reasonably infer that Appellant penetrated J.D.'s sexual organ because of her testimony that Appellant put both hands inside her panties and then touched her inside her "private area." *See Villalon*, 791 S.W.2d at 134.

Appellant also argues in his third issue that the lack of circumstantial evidence and J.D.'s testimony failed to establish his intent or knowledge. One may infer Appellant's intent or knowledge from J.D.'s testimony that he put his hands inside her panties and penetrated her "private area." *See Avila v. State*, No. 11-14-00359-CR, 2016 WL 2975538, at *3 (Tex. App.—Eastland May 19, 2016, no. pet. h.) (mem. op., not designated for publication) (inferring defendant's intent or knowledge from victim's testimony that he put his hand inside her underwear and penetrated her vagina with his finger). Furthermore, both Appellant and J.D. testified that Appellant's son, J.D.'s brother, and J.D. all slept on the bed and that J.D. slept against the wall. Thus, because Appellant was on the opposite side of the bed from J.D. and had to reach across the two other children to assault her, the jury could have inferred his intent. *See id.* We hold that there was sufficient evidence for a rational jury to have found beyond a reasonable doubt that Appellant intentionally or knowingly penetrated J.D.'s sexual organ with his finger. We overrule Appellant's first and third issues.

### B. Issue Two: The State adduced sufficient evidence that Appellant acted voluntarily.

The Texas Penal Code requires that an act be voluntary to establish guilt. *See* PENAL § 6.01(a) (West 2011). "'Voluntariness,' within the meaning of Section 6.01(a), refers only to one's own physical body movements." *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014) (quoting *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003)). Voluntariness of one's conduct and one's mental state are separate issues. *Whatley*, 445 S.W.3d at 166 (citing *Adanandus v.*

*State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993)); *compare* PENAL § 22.021(a)(1)(B) (requiring as an element of guilt for aggravated sexual assault a mental state of intentionally or knowingly), *and* PENAL § 6.03 (defining different culpable mental states), *with* PENAL § 6.01(a) (requiring that conduct be voluntary in order for an offense to be committed). "If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis, or other nonvolitional impetus, that movement is not voluntary." *Whatley*, 445 S.W.3d at 166 (quoting *Rogers*, 105 S.W.3d at 638).

Appellant argues that J.D.'s testimony establishes that Appellant was unconscious during the assault and, therefore, that the evidence was insufficient to establish voluntariness.[6] Appellant points to that part of J.D.'s testimony when she said that Appellant "went to sleep, and then I woke up because he was touching me," and later said, "No one was awake that I know of." Appellant argues that nothing disputes his claim of involuntariness. We disagree. As in *Whatley*, where the jury could reasonably have found that the defendant was awake, and feigned sleep, the jury in Appellant's case could reasonably have inferred that he also was awake and feigned sleep when he reached across two other children without waking those children and sexually assaulted J.D. Thus, the jury could have inferred that he acted consciously or voluntarily. We have reviewed the record, and we hold that the evidence was sufficient to prove that Appellant voluntarily acted when he sexually assaulted J.D. We overrule Appellant's second issue.

---

[6]Appellant did not request an instruction in the jury charge on the voluntariness of his actions, nor did he object to the jury instructions.

7

## V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


August 31, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.