**Opinion filed March 30, 2018**



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00110-CR

_____

## ANGELITA FERNANDEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**

**Mitchell County, Texas**

**Trial Court Cause No. 7560**

### M E M O R A N D U M   O P I N I O N

The jury found Appellant guilty of the third-degree felony offense of possession of a prohibited item in a correctional facility.[1]  Appellant elected for the jury to assess punishment, and it assessed punishment at confinement for eight years and a $4,000 fine.  On appeal, Appellant raises two issues.  We affirm.

---

[1]*See* TEX. PENAL CODE ANN. § 38.11 (West Supp. 2017).

## I. *The Charged Offense*

The grand jury indicted Appellant for possession of a prohibited item with intent to provide the item to a person confined in a correctional facility. The State alleged that Appellant "did then and there possess with intent to provide to a person confined in [the] Wallace Unit, a correctional facility, money." A person commits the offense of possession of a prohibited item in a correctional facility if the person "possesses with the intent to provide . . . money to a person confined in a correctional facility." PENAL § 38.11(a)(4).

## II. *Evidence at Trial*

At the time of the alleged offense, Appellant's son, Florentino Chapa,[2] was an inmate at the Wallace Unit, a correctional facility in Colorado City that was operated by the Texas Department of Criminal Justice. On the day of the alleged offense, Appellant, along with her niece and grandson, visited Chapa in the "no-contact" area of the facility. Unit officials not do allow physical contact between visitors and inmates in the "no-contact" area, but permit visitors and inmates to visit at booths where they are separated by a piece of glass and to communicate via telephone.

During visits, prison officials allow visitors to use coins to buy snacks and drinks from the vending machines for the inmates. The visitor must buy the snacks, but before the inmate receives the snacks, the visitor must open and pour the snacks into bowls in front of the officers. The officers then give the bowls to the inmates. Chapa asked for snacks during Appellant's visit. Appellant bought M&M's and animal crackers and took them to officers at the desk. Appellant had

---

[2]An investigator for the Office of the Inspector General testified that Florentino Chapa is an active Mexican Mafia member.

two bowls, and she put the animal crackers into one of them. The officers found a folded-up $100 bill in with the animal crackers. Visitors may not bring a $100 bill into the facility.

Assistant Warden Matt Kennelly questioned Appellant and Chapa about the $100 bill. Neither Appellant nor Chapa provided an explanation. Appellant refused to answer questions, but officials allowed her to leave the facility that day.[3] Later, a TDCJ employee interviewed Appellant at her home. At first, Appellant could not recall the incident, but she later remembered being questioned about the incident. She denied that she had put the money in the bowl or that she had "even approach[ed] to go get the Animal Crackers to put it inside the bowl." Appellant suggested that another woman might have put the money and animal crackers in the bowl.

Appellant testified at trial. She denied that she tried to give money to her son and said that she did not know how the $100 bill ended up in the bowl. Appellant testified that the only money that she had on her that day was twenty dollars in "change."

### III. *Analysis*

Appellant first challenges the sufficiency of the State's evidence. In her second issue, she claims that she received ineffective assistance of counsel.

A. *Issue One: The State adduced sufficient evidence to convict Appellant of the offense of possession of a prohibited item, money, with intent to provide it to a person confined in a correctional facility.*

Appellant argues that the evidence was insufficient for two reasons. First, the State's witnesses provided conflicting and inconsistent testimony about seeing Appellant place the money in the bowl. Second, the State did not prove

---

[3]Subsequently, Appellant was not allowed to visit Chapa.

"[w]ho the money was intended for." The State argues that it adduced sufficient evidence.

The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt of the charged offense. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). The trier of fact resolves conflicting inferences raised by the evidence, and we presume that the trier of fact resolved such conflicts in favor of the verdict, and we defer to that decision. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The State had the burden to prove that Appellant possessed money that she intended to give to her son, an inmate in a correctional facility. "Possession" means "actual care, custody, control or management," PENAL § 1.07(a)(39), and a "correctional facility" includes "a confinement facility operated by the Texas Department of Criminal Justice." *Id.* § 1.07(a)(14)(B). The State had three TDCJ employees, Assistant Warden Kennelly, Gwendolyn Hillis, and Heather Bell, testify that they were at or around the desk when Appellant approached with the snacks. Kennelly did not see Appellant drop the money into the bowl, but Hillis

4

and Bell testified that they did. Hillis testified that Appellant emptied "the candy into the bowl first and put the money in second." On cross-examination, Hillis said that she saw "[t]he bill drop[] out of [Appellant's] hand." Bell testified that she saw Appellant drop money into the bowl and that the $100 bill fell at the same time as the animal crackers fell from the package. Bell also testified that, at that time, Chapa stood at a different booth than the one he was assigned for visitation. Bell stated, "I don't know what [Chapa] was telling them. But, he kept on pointing at me, pointing at the desk." One of the children asked Bell what time it was, and Bell turned to look at the clock behind her. After Bell turned back around, she discovered the $100 bill in the bowl.

Appellant claims that the State's witnesses lied and "they [did not] have their stories straight." Appellant argues that Hillis gave two written statements that conflicted with her trial testimony. In her written statements, Hillis wrote that the $100 bill was on top of the animal crackers. However, at trial, she testified that Appellant emptied "the *candy* into the bowl first and put the money in second"[4] (emphasis added). Bell, through hand gestures, attempted to show how Appellant had dropped the $100 bill with the animal crackers, but when asked how it was possible for someone to drop money into a bowl as suggested, Bell said that she did not "know how to answer that." Appellant testified at trial that she got "chips or food," walked away from the counter, and returned to the booth to continue her visit with Chapa. She testified that a lady "started yelling, like screaming" at her, and grabbed her and that the officers then escorted her to

---

[4]Hillis corrected her testimony and said that she saw the money on top of the crackers, but then later conceded that she could not remember whether the money was dropped into the bowl of M&M's or animal crackers.

Kennelly's office. She also said that "[t]hey had another lady" and "they removed her and they were asking her questions" about the incident.

To the extent that there are inconsistencies in the State's evidence, the trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979). We "resolve inconsistencies in the testimony in favor of the verdict," *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000), and we "afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). The jury could have concluded that Appellant possessed the $100 bill with the intent to provide it to her son. Although no $100 bill was found on Appellant when she was searched at the entrance to the facility, Hillis and Bell testified that they saw Appellant drop the $100 bill into the bowl. *See* PENAL § 1.07(a)(14)(B). The jury chose not to believe Appellant and, instead, inferred and concluded that Appellant had possessed the money and intended to give it to Chapa along with the animal crackers. *See Short v. State*, 995 S.W.2d 948, 951–52 (Tex. App.—Fort Worth 1999, pet ref'd).

Appellant also argues that the State failed to prove "who the money was intended for." Appellant claims that "[t]he jury could only speculate that the money was for [Chapa], yet they could also speculate that the money was meant to bribe the wardens." "[J]uries are permitted to draw multiple reasonable inferences from the evidence (direct or circumstantial), but they are not permitted to draw conclusions based on speculation." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). "Speculation is mere theorizing or guessing about the

possible meaning of facts and evidence presented," whereas "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* We disagree that the jury could only speculate that the $100 bill was for Chapa. As we discussed above, there was evidence from which the jury could have reasonably inferred that Appellant intended to give Chapa the $100 bill with the animal crackers. We hold there is sufficient evidence to support Appellant's conviction. We overrule Appellant's first issue.

B. *Issue Two*: *Appellant did not receive ineffective assistance of counsel.*

In her second issue, Appellant argues that her trial counsel was ineffective because "he advised her to have the jury decide punishment instead of a judge, denying her an opportunity to be granted probation." Appellant argues that, if punishment would have been decided by a judge, "there was a chance for her to have been granted probation."

We review an ineffective assistance of counsel claim under the *Strickland* standard, which is a two-part analysis that includes a performance prong and a prejudice prong. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For the performance prong, Appellant must show that trial counsel's performance was deficient. *Id.* For the prejudice prong, Appellant must show that there is a reasonable probability that the outcome would have differed but for trial counsel's errors. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Strickland*, 466 U.S. at 694. "A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel." *Hudson v. State*, No. 11-15-00047-CR, 2016 WL 3573484, at *2 (Tex. App.—Eastland June 30, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010)). An appellate review of defense counsel's performance is highly deferential, and we presume that counsel's actions fell within the wide range of

7

reasonable and professional assistance. *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Walker v. State*, 406 S.W.3d 590, 594 (Tex. App.—Eastland 2013, pet. ref'd).

To overcome this presumption, Appellant's claim of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Id.* at 813–14. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). If trial counsel has not had an opportunity to explain the challenged actions, then we will not conclude that those actions constituted deficient performance unless they were so outrageous that no competent attorney would have engaged in them. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

Appellant argues that she could have received judge-ordered community supervision under Article 42A.053 of the Texas Code of Criminal Procedure,[5] if the judge had decided punishment. Under Article 42A.053, "[a] judge, in the best interest of justice, the public, and the defendant, after conviction . . . may: (1) suspend the imposition of the sentence and place the defendant on community supervision; or (2) impose a fine applicable to the offense and place the defendant on community supervision." CRIM. PROC. art. 42A.053(a) (West Supp. 2017).

---

[5]We note that, at the time of trial, Article 42.12 governed community supervision. However, the legislature recodified certain community supervision laws, effective January 1, 2017, with no substantive changes. Therefore, we refer to Article 42A.053 in this opinion.

Appellant claims that she followed her counsel's advice and decided to have the jury decide punishment; as a result, she claims that she could not have received judge-ordered community supervision under Article 42A.053.

Article 42A.053 does not limit a trial judge's ability to suspend a sentence and grant community supervision based on whether the defendant elects for the jury to assess punishment, as Appellant alleges. Article 42A.053 bars a trial court from suspending a sentence and granting community supervision if "the defendant is sentenced to serve: (1) a term of imprisonment that exceeds 10 years; or (2) a term of confinement under Section 12.35, Penal Code." CRIM. PROC. art. 42A.053(c). Additionally, a trial judge cannot suspend a sentence for certain offenses. *See id.* art. 42A.054. In this case, Appellant's term of imprisonment did not exceed ten years, was not a term of confinement under Section 12.35 of the Penal Code, and was not an offense listed under Article 42A.054. CRIM. PROC. art. 42A.053; *see id.* art. 42A.054; PENAL § 12.35(a). Therefore, the trial court could have invoked its "broad discretion" under Article 42A.053, suspended Appellant's sentence, and placed Appellant on community supervision even though Appellant elected for the jury to assess punishment. *See Ivey v. State*, 277 S.W.3d 43, 44–45 (Tex. Crim. App. 2009) (interpreting the predecessor statute to Article 42A.053 and holding that "a trial court may place an eligible defendant on community supervision even if the defendant has elected to have his punishment assessed by the jury and the jury does not recommend it").

The trial court could have, under Article 42A.053, suspended Appellant's sentence and granted her community supervision even though she chose to have the jury assess punishment. *See Ivey*, 277 S.W.3d at 44. Appellant has not shown that her trial counsel's performance was deficient, and "[a] failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective

assistance of counsel." *Hudson*, 2016 WL 3573484, at \*2 (citing *Perez*, 310 S.W.3d at 893).  We overrule Appellant's second issue.

IV.  *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

March 30, 2018

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[6]

---

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.